[Cite as *Pincus v. Dubyak*, 2021-Ohio-3034.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| ARLENE PINCUS, | : | |
| Plaintiff-Appellant, | : | No. 110135 |
| v. | : | |
| ROBERT DUBYAK, ET AL., | : | |
| Defendants-Appellees. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** September 2, 2021

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-910187

***Appearances:***

Kaufman, Drozdowski & Grendell, L.L.C., and Evan T. Byron, *for appellant.*

Reminger Co., L.P.A., Andrew J. Dorman, Holly Marie Wilson, and Aaren R. Host, *for appellees.*

MARY J. BOYLE, A.J.:

{¶ 1} Plaintiff-appellant, Arlene Pincus, appeals the trial court's order granting judgment on the pleadings in favor of defendants-appellees, Robert Dubyak and Dubyak Nelson LLC (collectively, "Dubyak"). She also appeals the trial

court's order denying her motions for leave to amend her complaint. She raises two assignments of error for our review:

> 1. The trial court committed reversible error by granting the Defendants' Civ.R. 12(C) motion for judgment on the pleadings.
>
> 2. The trial court committed reversible error by denying Plaintiff's two requests for leave to file a First Amended Complaint and a Second Amended Complaint.

{¶ 2} Finding merit to both assignments of error, we reverse the trial court's judgments and remand for further proceedings consistent with this opinion.

## I. Procedural History and Factual Background

{¶ 3} On January 16, 2018, Arlene filed a pro se complaint against Dubyak for legal malpractice. She filed the claim both in her individual capacity and as the legal representative for her husband, David Pincus, pursuant to being his power of attorney. On January 26, 2018, she voluntarily dismissed the claim without prejudice, pursuant to Civ.R. 41(A)(1)(a), through counsel who filed a notice of appearance the same day.

{¶ 4} On January 25, 2019, Arlene, through counsel, refiled the complaint, both individually and as legal representative for David. The complaint states that in May 2014, Arlene hired Dubyak for two matters: a probate matter regarding the estate of David's mother, and a civil litigation matter involving the bakery David owned with his brother, Steven Pincus. Arlene alleged that Dubyak committed legal malpractice in the bakery matter.

{¶ 5} In February 2019, Dubyak filed an answer and counterclaim. Dubyak asserted 15 affirmative defenses, including that the statute of limitations barred

Arlene's claim and that Arlene lacked standing. Dubyak's counterclaim sought $33,162.51 for unpaid legal fees and asserted claims for breach of contract, quantum meruit, and unjust enrichment. Arlene filed an answer to the counterclaim.

{¶ 6} In March 2019, Dubyak filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). Dubyak argued that Arlene had no legal authority to file, pro se, a claim on David's behalf, and the January 2018 complaint that she filed pro se therefore did not trigger Ohio's savings statute, R.C. 2305.19(A). He contended that the January 2019 legal malpractice claim that Arlene now brings as David's legal representative is therefore untimely. Dubyak also maintained that Arlene was not a party to the bakery matter in her individual capacity except as to a counterclaim against her that was dismissed in October 2017. Dubyak therefore argued that the one-year statute of limitations barred Arlene's malpractice claim asserted in her individual capacity.

{¶ 7} In April 2019, Arlene filed a combined motion for leave to file an amended complaint and response to Dubyak's motion for judgment on the pleadings. She argued that as David's power of attorney, she had the right to hire Dubyak to pursue the bakery case, and that she, not David, was always Dubyak's client, even after the counterclaim against her was dismissed in October 2017. She argued in the alternative that she had standing to bring the legal malpractice claim as a third party because she was in privity with David and because Dubyak acted with malice. With the motion, Arlene filed a first amended complaint. Dubyak filed a reply in support of his motion for judgment on the pleadings.

{¶ 8} Arlene then filed a motion for leave to file a reply brief, which the trial court granted. She filed a combined reply brief and motion for leave to file a second amended complaint. She argued that while she "likely did not" have standing to file the pro se complaint for legal malpractice on behalf of David, she had standing to bring the claim in her individual capacity. The second amended complaint asserted two alternative counts for legal malpractice, one specified as "Arlene as the Client" and the other as "David as the Client." Dubyak filed an opposition to Arlene's motion for leave to file a second amended complaint.

{¶ 9} In May 2019, the trial court granted Dubyak's motion for judgment on the pleadings. In its journal entry, the trial court explained that Arlene's January 2018 complaint was a "nullity" because she filed it "as a pro se litigant who lacked standing," and the statute of limitations for the legal malpractice claim had expired. The trial court also denied Arlene's motions for leave to file the first and second amended complaints because they "cannot cure the nullity created when [Arlene] filed as a pro se litigant[.]"

{¶ 10} In June 2019, Arlene filed a motion for relief from judgment pursuant to Civ.R. 60(B). She argued that the malpractice claim brought in her individual capacity should not have been dismissed because she had standing to pursue it and because she timely filed it. Dubyak filed an opposition, and the trial court denied Arlene's motion without opinion.

{¶ 11} In July 2019, Arlene filed a motion for reconsideration or in the alternative for Civ.R. 54(B) certification. Arlene requested that the trial court vacate

its May judgments for "the reasons set forth in" her prior briefing or certify the entries under Civ.R. 54(B) so that she can appeal them without waiting for the resolution of Dubyak's counterclaim. Dubyak filed an opposition, and the trial court denied Arlene's motion without opinion.

{¶ 12} In September 2020, Dubyak filed a motion for summary judgment on the counterclaim for unpaid legal fees and attached the fee agreements as exhibits. Arlene filed an opposition, and Dubyak filed a reply.

{¶ 13} In October 2020, Arlene filed a renewed motion for reconsideration of the judgments granting Dubyak's motion for judgment on the pleadings and denying her motions for leave to amend the complaint based on "new evidence." Arlene argued that the fee agreements attached to Dubyak's summary judgment motion showed that the trial court's rulings were in error. She argued that one of the fee agreements was addressed to "Mrs. Pincus *only*" (emphasis sic) and the other was addressed to both Arlene and David. Dubyak filed an opposition.

{¶ 14} In November 2020, the trial court granted Dubyak's motion for summary judgment and denied Arlene's renewed motion for reconsideration. Arlene filed a timely notice of appeal, challenging the trial court's order granting Dubyak's motion for judgment on the pleadings as to the malpractice claim in her individual capacity and the trial court's order denying her motions for leave to amend her complaint.

## II. Law and Analysis

{¶ 15} In her first assignment of error, Arlene argues that the trial court erred in granting Dubyak's motion for judgment on the pleadings. In her second assignment of error, she argues that the trial court erred in denying her motions for leave to file the first and second amended complaints. We will address the assignments of error together for ease of discussion.

{¶ 16} Arlene concedes that her pro se complaint in January 2018 was a "legal nullity" as it relates to her claim on behalf of David because she was not authorized to file a lawsuit on his behalf. But she maintains that she also brought the malpractice claim in her individual capacity, which she could do pro se. She contends that her January 2018 complaint therefore triggered Ohio's savings statute, R.C. 2305.19(A). She argues that she had standing to bring the malpractice claim in her individual capacity because (1) she had an attorney-client relationship with Dubyak that did not terminate until January 17, 2017, or (2) she had third-party standing because she was in privity with David, or (3) she had third-party standing because Dubyak acted with malice.

{¶ 17} We apply a de novo standard of review to a trial court's decision on a motion for judgment on the pleadings filed under Civ.R. 12(C). *Vinicky v. Pristas*, 163 Ohio App.3d 508, 2005-Ohio-5196, 839 N.E.2d 88, ¶ 3 (8th Dist.). Granting a judgment on the pleadings is appropriate where plaintiffs have failed in their complaint to allege a set of facts that, if true, would establish the defendant's liability. *Walters v. First Natl. Bank of Newark*, 69 Ohio St.2d 677, 433 N.E.2d 608 (1982).

And, like a motion to dismiss, the factual allegations of the complaint are taken as true, but unsupported conclusions are insufficient to withstand the motion. *See Moya v. DeClemente*, 8th Dist. Cuyahoga No. 96733, 2011-Ohio-5843, ¶ 10. "Civ.R. 12(C) requires a determination that no material factual issues exist and that the movant is entitled to judgment as a matter of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996). Thus, a trial court appropriately grants a motion for judgment on the pleadings when it "(1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *Id.*

{¶ 18} "The Ohio Rules of Civil Procedure provide for liberal amendment of pleadings, under certain circumstances as of right, otherwise by leave of court. Leave of court 'shall be freely given when justice so requires[.]'" *Patterson v. V&M Auto Body*, 63 Ohio St.3d 573, 575, 589 N.E.2d 1306 (1992), quoting Civ.R. 15(A). The trial court has discretion to grant or deny a motion for leave to amend a pleading, and we therefore review such a ruling for abuse of discretion. *Lemons v. State*, 2017-Ohio-8584, 100 N.E.3d 871, ¶ 125 (8th Dist.). The Ohio Supreme Court has explained that "where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Peterson v.*

*Teodosio*, 34 Ohio St.2d 161, 175, 297 N.E.2d 113 (1973). Accordingly, when reviewing whether the trial court erred in granting judgment on the pleadings and denying Arlene's motions for leave to amend, we will consider the allegations in Arlene's first and second amended complaints.

{¶ 19} To establish a cause of action for legal malpractice, one must show (1) an attorney-client relationship, (2) professional duty arising from that relationship, (3) breach of that duty, (4) proximate cause, and (5) damages. *Shoemaker v. Gindlesberger*, 118 Ohio St.3d 226, 2008-Ohio-2012, 887 N.E.2d 1167, ¶ 18. The Ohio Supreme Court has held that Ohio attorneys are liable to third parties for the good-faith representation of a client only if the third party is in privity with the client or if the attorney acted with malice. *Scholler v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984), paragraph one of the syllabus. "This rule is rooted in the attorney's obligation to direct attention to the needs of the client, not to the needs of a third party not in privity with the client." *Shoemaker* at ¶ 9, citing *Simon v. Zipperstein*, 32 Ohio St.3d 74, 76, 512 N.E.2d 636 (1987).

{¶ 20} The statute of limitations for the filing of a legal malpractice claim is one year. R.C. 2305.11(A). An action for legal malpractice accrues on the later of two dates: (1) "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney"; or (2) "when the attorney-client relationship for that particular transaction or undertaking terminates." *Zimmie v. Calfee, Halter & Griswold*, 43

Ohio St.3d 54, 538 N.E.2d 398 (1989), citing *Omni-Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988).

{¶ 21} Ohio's savings statute, R.C. 2305.19(A), operates to "save" certain refiled actions that would otherwise be barred by the applicable statute of limitations where a plaintiff (1) originally commenced an action within the proper time limits, (2) failed other than upon the merits, and (3) refiles within one year. A voluntary dismissal pursuant to Civ.R. 41(A)(1) is a failure "otherwise than upon the merits." *Gruber v. Kopf Builders*, 147 Ohio App.3d 305, 309, 770 N.E.2d 598, ¶ 10 (8th Dist.2001).

{¶ 22} Arlene contends that she had an attorney-client relationship with Dubyak (or, alternatively, that she was a third-party with standing to sue based on David's attorney-client relationship with Dubyak) from May 2014 to January 17, 2017. She alleges in her first and second amended complaints that she terminated the relationship via email on January 17, 2017. Her pro se complaint filed on January 16, 2018, would therefore be within the one-year statute of limitations. When she dismissed that complaint on January 26, 2018, she had one year to refile it, pursuant to R.C. 2305.19(A). She therefore argues that, under this theory, her case filed on January 25, 2019, is timely.

{¶ 23} Dubyak argues that he "was terminated from David's representation" the day before Arlene sent the email, on January 16, 2017, when new counsel entered an appearance for David in the bakery matter. Regardless, Arlene filed her pro se

complaint on January 16, 2018, so her complaint would be timely whether the attorney-client relationship terminated on January 16 or January 17, 2017.

{¶ 24} Dubyak also maintains that it is "undisputed" that he "represented Arlene individually only for purposes of defending against Steven's claims in the Bakery Action." Dubyak argues that this representation ended when the parties settled the counterclaim against Arlene, and Steven dismissed the counterclaim against her with prejudice on October 17, 2016. Under Dubyak's theory, Arlene filed her January 2018 pro se complaint after the one-year statute of limitations expired and did not trigger the savings statute, R.C. 2305.19(A). Her January 2019 complaint would therefore be untimely.

{¶ 25} Thus, whether the statute of limitations bars Arlene's complaint depends on whether she was in an attorney-client relationship with Dubyak from May 2014 to January 2017, or if Dubyak had an attorney-client relationship with only David during this timeframe. If Arlene failed to allege facts that would establish an attorney-client relationship between her and Dubyak that did not terminate until January 2017, she can bring this action only if she was in privity with David or if Dubyak acted with malice.

{¶ 26} We will start with Arlene's first theory: that an attorney-client relationship existed between Dubyak and Arlene (not just Dubyak and David) from May 2014, when she hired him for the probate and bakery matters, until January 17, 2017, when she terminated the relationship in writing via email.

{¶ 27} The Ohio Supreme Court has explained that an attorney-client relationship exists when "a person manifests an intention to obtain legal services from an attorney and the attorney either consents or fails to negate consent when the person has reasonably assumed that the relationship has been established." *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 26. "Thus, the existence of an attorney-client relationship does not depend on an express contract but may be implied based on the conduct of the parties and the reasonable expectations of the putative client." *Id.*

{¶ 28} In the original complaint, Arlene alleged that she "hired" Dubyak for the probate and bakery matters. In the first and second amended complaints, Arlene added the following allegations:

*First*: Arlene (not David) hired Mr. Dubyak in May of 2014. * * *

*Second*: David never verbally retained Mr. Dubyak or signed any engagement letter with him and/or his firm. * * *

*Third*: Mr. Dubyak never once met with David to discuss the Probate Case, the Bakery Case, or any other legal matter.

*Fourth*: One of the initial letters Mr. Dubyak sent in connection with the Bakery Case was the litigation hold letter he sent on November 6, 2014 to Steven's counsel * * *. In the very first sentence of the 11/16/14 letter, Mr. Dubyak explicitly states: "On behalf of *my clients, David and Arlene Pincus*, I am formally demanding * * *." (Emphasis added.) He then goes on to send a carbon copy of the letter to Arlene, not David.

*Fifth*: All of the other attorney-client correspondence in Mr. Dubyak's files for the Bakery Case is between him or his law firm and Arlene. There is not one letter to or from David. Moreover, there is even a letter from Mr. Dubyak to Arlene dated December 16, 2016. * * *

*Sixth*: All of Mr. Dubyak's legal bills were addressed and sent to Arlene, not David. * * *

*Seventh*: Arlene terminated her attorney-client relationship with Mr. Dubyak in writing via email effective January 17, 2017. Mr. Dubyak responded the following day. * * *

In short, at no point in time during their entire attorney-client relationship did Mr. Dubyak ever — at any point in time — advise Arlene that she was not the client or that his representation of her was somehow separate and distinct from his representation of David.

Moreover, never once did Mr. Dubyak — either on October 17, 2016 or at any time thereafter — advise Arlene that his attorney-client relationship with her concluded as of the day of the settlement and consent judgment in the Bakery Case (i.e., October 17, 2016).

{¶ 29} Arlene also points to language in the fee agreements attached to Dubyak's summary judgment motion. But these agreements were not part of the pleadings, and we therefore cannot consider them in this appeal. When reviewing motions pursuant to Civ.R. 12(C), we are constrained to the allegations in the pleadings and any "written instrument" attached to a complaint or answer. *State ex rel. Leneghan v. Husted*, 154 Ohio St.3d 60, 2018-Ohio-3361, 110 N.E.3d, ¶ 17.

{¶ 30} Dubyak's answer states that Arlene retained him only to pursue causes of action on behalf of David. The answer also states that the plaintiff in the probate matter was "Arlene Pincus, as legal representative of David Pincus," and the plaintiff in the bakery matter was "Arlene Pincus, as legal representative and next friend of her husband, David Pincus." But Dubyak points us to no authority showing that an attorney-client relationship exists between the attorney and only the grantor of a power of attorney, as opposed to the grantor's agent. We have been unable to locate any Ohio cases on point. We note, however, that the highest courts in Maine and South Carolina have found that in general, an attorney has an attorney-client

relationship with the agent only — not the grantor of a power of attorney. *See Estate of Keatinge v. Biddle*, 2002 ME 21, 789 A.2d 1271, ¶ 14 (2002) ("In ordinary circumstances, when the holder of a power of attorney retains counsel to assist him in fulfilling his duties, the lawyer has an attorney-client relationship with the holder only."); *Argoe v. Three Rivers Behavioral Ctr. & Psychiatric Solutions*, 388 S.C. 394, 401, 697 S.E.2d 551 (2010) (finding that attorney had no attorney-client relationship with the mother because the mother appointed her son as her attorney-in-fact, and the attorney therefore had a duty of care only to the son).

{¶ 31} Whether there was an attorney-client relationship between Dubyak and Arlene is a factual question in this case. But on a motion for judgment on the pleadings, we must construe Arlene's allegations as true. Based on the allegations in her amended complaints, Arlene manifested an intention to obtain legal services from Dubyak, and she reasonably assumed that an attorney-client relationship had been established between her and Dubyak. Through discovery and the presentation of evidence, Dubyak may rebut these allegations. But at the pleading stage, Arlene has satisfied her burden to establish the existence of an attorney-client relationship between her and Dubyak from May 2014 to January 17, 2017. We therefore need not address the parties' arguments regarding privity and malice.

{¶ 32} Accordingly, we find that the trial court erred in granting Dubyak's motion for judgment on the pleadings as to Arlene's malpractice claim in her individual capacity. Furthermore, because the allegations in the first and second amended complaint added allegations to better establish the attorney-client

relationship between Dubyak and Arlene, the trial court abused its discretion when it denied her motions for leave to amend the complaint.  We therefore sustain both of Arlene's assignments of error.

{¶ 33} Judgment reversed and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MARY J. BOYLE, ADMINISTRATIVE JUDGE

ANITA LASTER MAYS, J., and
FRANK D. CELEBREZZE JR., J., CONCUR